This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**IN THE MATTER OF THE PROTEST**
**OF TINDALL CORPORATION**

**NEW MEXICO TAXATION AND**
**REVENUE DEPARTMENT,**

     Plaintiff-Appellant,

v.                                 **NO. 31,194**

**TINDALL CORPORATION,**

     Defendant-Appellee.

**APPEAL FROM THE TAXATION AND REVENUE DEPARTMENT**
**Monica Ontiveros, Hearing Officer**

Gary K. King, Attorney General
Peter A. Breen, Special Assistant Attorney General
Santa Fe, NM

for Appellant

Joe Lennihan
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Appellant New Mexico Taxation and Revenue Department (the Department) issued Appellee Tindall Corporation (Tindall) a tax assessment for receipts from the sales of precast concrete prison cells (the cells) sold to six New Mexico counties. After an administrative hearing, a hearing officer concluded that the receipts from the sales of the cells were tax deductible sales of tangible personal property to a government under NMSA 1978, Section 7-9-54(A) (2003). The Department argues that the hearing officer erred by not determining that the receipts from the sales of the cells were either receipts from construction activities or receipts from the sale of construction materials, both of which are considered a sale of a service and therefore not eligible for the tax deduction under Section 7-9-54(A). We affirm.

**BACKGROUND**

On June 30, 2005, the Department issued a tax assessment to Tindall, resulting from an audit that began on October 19, 2004. The Department assessed Tindall a gross receipts tax of $227,173.29 in principal, plus interest, for the tax period of December 31, 1999 through August 31, 2004. The assessment arose out of the receipts from the sales of the cells manufactured by Tindall and sold to six New Mexico counties. Tindall filed a written protest to the assessment on September 25,

2005.

A hearing officer conducted a two-day administrative hearing on September 24-25, 2008 and issued a decision and order on March 21, 2011. In the portion relevant to this appeal, the hearing officer concluded that the receipts from the sales of the cells were receipts from the sale of tangible personal property to the government and therefore were deductible from gross receipts under Section 7-9-54(A). Further, the hearing officer concluded that the receipts from the sales of the cells were not from sales of construction materials or components or ingredients of a construction project, which are taxable under Section 7-9-54(A)(3). The Department filed a timely appeal.

On appeal, the Department argues that Tindall's receipts from the sales of the cells were receipts from the sale of construction services, not tangible personal property, and therefore were subject to the gross receipts tax. The Department argues that the "record shows unquestionably that the activities of [Tindall] were construction." Alternatively, the Department argues that the receipts from the sales of the cells were receipts from the sale of construction materials and therefore taxable under Section 7-9-54(A)(3).

**STANDARD OF REVIEW**

In an appeal from an administrative proceeding, this Court will reverse the hearing officer's decision only if it was arbitrary and capricious, not supported by

3

substantial evidence, or not in accordance with the law.  NMSA 1978, § 7-1-25(C) (1989).  "Substantial evidence is relevant evidence that a reasonable mind would find adequate to support a conclusion." *Disabled Am. Veterans v. Lakeside Veterans Club, Inc.*, 2011-NMCA-099, ¶ 9, 150 N.M. 569, 263 P.3d 911 (internal quotation marks and citation omitted).  "We will not disturb the agency's factual findings if supported by substantial evidence[.]"  *Montaño v. N.M. Real Estate Appraiser's Bd.*, 2009-NMCA-009, ¶ 8, 145 N.M. 494, 200 P.3d 544.  To the extent that we engage in statutory interpretation or apply the facts to the law, our review is de novo.  *GEA Integrated Cooling Tech. v. State Taxation & Revenue Dep't*, 2012-NMCA-010, ¶ 5, __ N.M. __, 268 P.3d 48.  However, we give some deference to the hearing officer's reasonable interpretation or application of the law.  *Id.*

**RECEIPTS FROM SALE OF CONSTRUCTION**

The Department argues that Tindall's receipts from the cells were from construction activities and therefore were taxable as receipts from the performance of services.  New Mexico law imposes an excise tax on gross receipts from the sales of tangible personal property as well as for the performance of services.  NMSA 1978, § 7-9-3.5(A)(1) (2007); NMSA 1978, § 7-9-4 (2010). NMSA 1978, Section 7-9-3(M) (2007) defines "service" as including "construction activities and all tangible personal property that will become an ingredient or component part of a construction project."

4

NMSA 1978, Section 7-9-3.4(A)(1)(b) (2003), defines "construction" as including "the building, altering, repairing[,] or demolishing in the ordinary course of business any . . . building, stadium[,] or other structure[.]"

Under the Department's regulations, construction includes any prefabricated buildings that are designed to be permanently affixed to the land, even if manufactured off-site and assembled at the building site. NMAC 3.2.1.11(F)(1) (12/30/03). However, the regulations provide that a portable building or a modular relocatable building is not considered the sale of construction and therefore is the sale of tangible personal property eligible for the governmental deduction in Section 7-9-54(A). *See* NMAC 3.2.1.11(F)(2). The regulation defines a portable or modular building as one that is usually manufactured off-site, and which is (1) designed to be relocatable, and (2) when delivered to the installation site, generally requires only the blocking, levelling, and in the case of modular relocatable buildings, joining of modules. *Id.* The hearing officer concluded that the cells were portable or modular buildings under NMAC 3.2.1.11(F)(2), and therefore the receipts from the sales of the cells were deductible as receipts from selling tangible personal property to a government under Section 7-9-54(A).

The Department directs us to evidence adduced at the hearing to support its contention that Tindall engaged in construction activities. First, the Department

5

points out that the cells weighed twenty-five to thirty tons each; contained fixtures, plumbing, wiring, and 2000 pounds of rebar; were installed onto a precast foundation that required fastening with high strength steel dowels and grout over several days; would be fully enclosed and unrecognizable once the jail was completed; and were built to withstand natural disasters and "600 blows from a sledgehammer." The Department argues that the cells are therefore permanent and not portable buildings. Second, the Department argues that other evidence at the hearing indicates that Tindall is a company that is engaged in construction, including that Tindall (1) has a general contractor's license in New Mexico and other states, (2) used American Institute of Architecture form contracts and used a bid form that "contained terms commonly associated with construction," (3) fabricated the modules based on customer specifications, (4) participated in the safety meetings of the general contractor and a post-construction walk through with the other contractors, (5) sent employees experienced and trained in construction trades to install the cells, and (6) applied for payment of overtime and for partial completion. Third, the Department points out that Tindall refers to itself as a contractor in several documents or states that it is engaged in construction and characterizes itself as a contractor in its tax returns in Georgia. Although this evidence may support a conclusion that Tindall was engaged in construction activities, this Court will only reverse the factual findings of the hearing

6

officer when the findings are unsupported by substantial evidence. *See* § 7-1-25(C)(2); *Montaño*, 2009-NMCA-009, ¶ 8.

In determining whether substantial evidence supported the hearing officer's opposite conclusion that Tindall was not engaged in construction activities, we are guided by the definition of a portable or modular building set forth in NMAC 3.2.1.11(F)(2). As we noted, the sale of a portable building is not a sale of construction activities under this regulation and instead is considered the sale of tangible personal property eligible for the governmental deduction in Section 7-9-54(A). We therefore turn to whether substantial evidence supports the hearing officer's conclusion that the cells were portable buildings based on the definition that a portable building is (1) designed to be relocatable, and (2) when delivered to the installation site, generally requires only the blocking, levelling, and in the case of modular relocatable buildings, joining of modules. *See* NMAC 3.2.1.11(F)(2).

First, substantial evidence supported the hearing officer's conclusion that the cells were designed to be relocatable. The hearing officer cited testimony in its findings that Tindall fully constructed the cells at its plant in Georgia and delivered them by truck or train to its customers. Further, a Tindall sales executive testified that Tindall is in negotiations to sell precast concrete cells overseas for use as hunting lodges and storage units and that the potential customers expressed interest due to the

ability to move the cells from one hunting club to another. Further, the sales executive testified that the manner of placing and removing the cells is substantially similar to placing or removing a mobile home, and, that in many states, these cells are required to be registered as mobile homes. This evidence is sufficient for a reasonable factfinder to conclude that the cells are designed to be relocatable. *See Disabled Am. Veterans*, 2011-NMCA-099, ¶ 9.

Second, substantial evidence supported the hearing officer's conclusion that the cells only required the blocking, levelling, or joining of modules when delivered to the installation site. Jerry Long, a crane operator, erector, and rail supervisor for Tindall, testified that, although cranes are used to unload the cells, once Tindall delivered the cells to the installation site, a crew of three to four employees can install the cells to the foundation in thirty minutes, using only a level, a pry-bar, a hammer, and a pipe wrench. The cells are held into place by four to six metal rods that are screwed into the cells and then are grouted to the foundation. The employees level the cells on the foundation using non-stick plastic shims. Again, a reasonable factfinder could conclude from this testimony that the installation process does not require on-site assembly and instead only requires blocking, levelling, and the joining of modules of the cells. *See id.* ¶ 9. The hearing officer's determination that the cells were portable or modular relocatable buildings is supported by substantial evidence.

**RECEIPTS FROM CONSTRUCTION MATERIALS**

Alternatively, the Department argues that the receipts from the sales of the cells are receipts from a sale of construction material and are therefore taxable under Section 7-9-54(A)(3). Section 7-9-54(A)(3) states that the deduction for sale of tangible goods to the government does not apply to "receipts from selling construction material[.]" The Department's regulations, NMAC 3.2.212.10(B)(2) (5/31/01), provide that the sale of construction materials is the taxable sale of a service. Section 7-9-3.4(B) defines construction material as "tangible personal property that becomes or is intended to become an ingredient or component part of a construction project[.]" The hearing officer determined that the Department failed to present credible evidence that the cells became an ingredient or component of a construction project or that Tindall intended the cells to become an ingredient or component of a construction project.

The Department apparently concedes that it did not present any evidence that the cells actually became an ingredient or component of a construction project and argues that the "record is replete" with evidence that the cells were intended to become a part of a construction project. In support, the Department again focuses on evidence regarding the appearance, size, weight, and manner of installation of the cells. Further, the Department again argues that the way Tindall conducts its business

is characteristic of a contractor. Finally, the Department points out that removing the cells from the finished jail would require that a portion of the jail be destroyed, that Tindall has only removed two cells out of a total of 8000 that it has installed over the years, and that Tindall has never moved a cell to a different location once it has installed the cell. However, again, we review whether substantial evidence exists to support the hearing officer's findings, not whether evidence exists to support an opposite conclusion. *See* § 7-1-25(C)(2); *Montaño*, 2009-NMCA-009, ¶ 8.

Substantial evidence supported the hearing officer's conclusion that Tindall did not intend for the cells to become an ingredient or component of a construction project. The hearing officer relied on "numerous documents," including bid forms, contracts with the counties and applications for payment, that contained "no reference" to a construction project and only indicate that Tindall delivered and erected precast concrete cells to the counties. After reviewing these documents, the hearing officer did not err in how she characterized the documents. The documents only refer to the transactions involving the cells. Further, two of Tindall's employees testified that cells are sold as separate units and that Tindall has no control over the cells once it delivers the cells to the customers. This evidence is sufficient for a reasonable factfinder to conclude that Tindall sold the cells without the intent that the cells become an ingredient or component of a construction project. *See Disabled Am.*

10

*Veterans*, 2011-NMCA-099, ¶ 9. We therefore affirm the hearing officer's determination that the cells are not construction materials.

**CONCLUSION**

For the foregoing reason, we affirm the hearing officer's decision and order.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**J. MILES HANISEE, Judge**